## CUMMINGS *v.* KNIGHT.

Payments of usurious interest upon a note cannot be recalled by the payer after the lapse of six years, and applied upon the principal.

BLODGETT, J. Writ of entry, dated July 23, 1887, to foreclose a mortgage securing the defendant's note to the plaintiff, dated March 26, 1868, and payable on demand, with interest annually. At the time the note was given money was worth in the market ten per cent., and the defendant verbally agreed with the plaintiff to pay him that rate if he would make the loan. This agreement as to the rate of interest was recognized by the parties and performed by the defendant until Nov. 19, 1875, when the agreement was cancelled. The payments up to that time were

made, received, and indorsed on the note as payments of interest. In 1882 the defendant intimated to the plaintiff that he had been informed that he was obliged to pay but six per cent. interest from the beginning ; but he did not then rescind the application previously made, or demand the money paid in excess of the legal rate, or ask to have it applied upon the principal. He now asks to have it so applied, and whether it shall be is the only controversy between the parties.

In *Peterborough Savings Bank* v. *Hodgdon*, 62 N. H. 300, it was held that when the debtor appropriates usurious payments to the interest, no other application can be made of them except at his election ; that the payment of the extra interest being regarded as compulsory, he may recall the application and sue for the penalty within the time limited by statute, and recover back three times the illegal interest; or he may recover back the money paid as usury in an action for money had and received at any time within six years, or he may have it applied as a payment upon the principal, but until he makes his election the law will not disturb the application made by the parties at the time of payment, and such election must be made within the period of the statute of limitations of six years.

It is conceded by the defendant that this case is directly in point against him, but he contends that its limitation of the debtor's right to have the usury applied as a payment upon the principal to six years is not only erroneous, but that it is also irreconcilable with *s.* 4, *c.* 213, Gen. Sts., which provides that no contract shall be rendered invalid by reason of the securing therein or thereby, or the paying or receiving thereon, a higher rate of interest than the legal rate; but the money secured thereby, and actually advanced or loaned thereon, may be recovered with interest at six per cent.

Neither of these contentions is well founded. The first rests mainly upon the fallacious assumption that the debtor's right of application is in the nature of and as extensive as the right of recoupment, which exists in certain cases where the right of set-off does not exist. But the doctrine of recoupment cannot be invoked in this case. The defendant has sustained no damages by reason of the plaintiff's non-performance of his part of the contract sued on ; no breach of it is even alleged against him, nor is any deceit or fraud in relation to it imputed to him. There is, in fact, nothing which brings the defendant's claim within the principles of recoupment, and it is therefore unnecessary as well as useless to consider whether a claim which is proper in its nature, and so connected with the cause of action as to be strictly the subject of recoupment, is or is not coëxtensive with the cause of action itself. No such question arises here. On the contrary, the only question is, whether the law will suspend the operation of the statute of limitations to a claim for usury in favor of a party who has voluntarily

and unconscionably neglected to avail himself of any of the three remedies with which it has invested him for his protection.

To this question we think there is but one logical answer, for although the law regards the lender on usury as the oppressor and the borrower as the oppressed, and therefore will not treat the payment of usurious interest as a voluntary payment, but rather as made under moral duress and through the constraint of a contract wrongfully obtained by taking advantage of the necessities of the borrower, and hence affords him relief, it nevertheless requires him to seek relief seasonably, and no reasonable ground exists for giving to him a longer period than is afforded by the plain and specific affirmative remedies which the law provides.  There is no injustice in withholding these remedies after the lapse of the appointed time, and subjecting the borrower to the merited consequences of his own neglect; and even if it were otherwise, it would be far greater injustice to pervert the remedies for his protection from oppression into a protection against his laches.

And upon authority, also, the defendant stands no better, for while in some of the states (contrary to the well known rules governing the appropriation of payments by the parties, and upon the indefensible theory that there can be no payment of usury so long as any principal or legal interest remains unpaid) it is held that so long as any part of the debt remains unpaid, the debtor may insist upon a deduction of the usury therefrom, yet the general current of the authorities is in unison with *Davis* v. *Converse*, 35 Vt. 503, where it is said by the court,—" We are not aware of any case where it has been held that a payment of usury could be set off by way of defence to any greater extent than it could be enforced by an action to recover it back. . . .  To hold that the debtor may, after he has allowed his claim to sleep until it is barred by the statute, set it up as a payment on the debt, would conflict with numerous adjudged cases. . . .  We do not see any good ground for the debtor to claim that he is harshly treated when he is allowed to deduct to the same extent that the law would afford him redress by action.  And it seems to us that the general purpose and spirit of the statute of limitations, as a statute of repose and a protection against stale and unjust claims, is as justly and fairly applied to such claims as to any other."

In support of his second contention the defendant's argument is, that the section before cited limits the right of the creditor, and plainly marks out and defines his interest under an usurious contract, so that whenever he seeks a judgment the rule is prescribed for him that he is to have his actual investment, with lawful interest, and no more, and that it is made the imperative duty of the court in the rendition of the judgment to apply all payments made on the contract to the legal indebtedness.

To this argument it may be replied, upon the authority of *Rohan* v. *Hanson*, 11 Cush. 44, that the plaintiff seeks to recover

nothing but his actual investment and legal interest. His note and mortgage contain no stipulation for illegal interest, and none has been paid upon them. When they were given, a distinct and independent parol agreement was made between the parties whereby the defendant contracted with the plaintiff to pay him ten per cent. annually for the use of the mortgage loan until it was paid; and whatever sums the defendant has paid, aside from one payment, have been paid upon that contract, and so appropriated by him at the time he made them, and not upon or in satisfaction of the note and mortgage. If this view is correct, section 4 has of course no application to the plaintiff's cause of action.

But assume that the payments of illegal interest were made upon the note and should have been applied in reduction of the principal, the right of the parties to apply them as they did is beyond controversy, and as the defendant did not within six years recall the application so made by him, his right to have them appropriated to the legal indebtedness long since expired by limitation. In this jurisdiction, at least, it is not and never has been the theory, either of the law or of legislation, that no laches is to be imputed to the borrower on usury, and that against him no time runs so as to bar his rights. No such principle has ever obtained in our decisions or in our statutes. In both alike he is carefully shielded from oppression, but in neither is he exempted from the disabilities rightfully attaching to those who, from inattention and neglect, sleep away their rights. And as no saving clause in his favor is to be found in the statutes of limitation, which are general and affect all cases not specially exempted, he cannot be exempted from their operation by judicial construction. To hold that the provision relied on by the defendant stays these statutes and keeps a claim for usury in a state of suspended animation until such time as the creditor sees fit to enforce payment of his debt, would require evidence which that provision does not afford, and which the acute reasoning of counsel does not supply. In fact, nothing but language admitting of no other interpretation would afford sufficient evidence that it was the legislative purpose, in the enactment of *s.* 4, to except the debtor from the bar of limitation, or to impose upon the court the duty of enforcing stale claims, or of appropriating payments contrary to the deliberate and specific application made by the parties; and until such evidence is afforded, there will be no occasion to overrule *Bank* v. *Hodgdon* on account of the statutory objection made by the defendant.

*Case discharged.*

BINGHAM and CARPENTER, JJ., did not sit: the others concurred.

*H. M. Morse* and *Aldrich & Remich*, for the plaintiff.

*Bingham, Mitchell & Batchellor*, for the defendant.