## REED v. EASTMAN AND OTHERS.

### [IN CHANCERY.]

### *Usury.*

On petition for foreclosure, brought by the purchaser of the mortgage notes against the purchaser of the equity of redemption, the defendant sought to abate the claim by showing that the notes were given in part for usurious interest. *Held*, that the right so to do was personal to the maker of the notes, the same as the right to recover money paid for usury is personal to the payer.

APPEAL from the Court of Chancery.

The petition alleged that on May 8, 1866, Luke Eastman executed a mortgage of certain land to George P. Howe, conditioned for the payment of said Eastman's four promissory notes of that date, for $250 each, payable in five, six, &c. years, with interest annually, and on the same day executed another mortgage of the same land to Martin P. Richardson, conditioned for the payment of said Eastman's eight promissory notes of that date for $515, $535, $545, $555, $565, $575, $585, and $595, respectively, the

first of which was payable on November 1, 1867, and the others in one, two, &c. years from November 1, 1868, with interest annually ; that three of the first-named, and the last five of the second-named, notes were due and unpaid, together with a large amount of interest thereon, that they had been sold and transferred, and the mortgages whereby they were secured had been assigned, to the orator, and that he was the owner thereof; that the orator was the owner of a certain other mortgage of the same premises, executed by said Eastman to C. J. Gleason, February 1, 1872, conditioned for the payment of said Eastman's fifteen promissory notes, two for $300 each, four for $350 each, three for $400 each, four for $450 each, one for $500, and one for $550, payable in one, two, &c. years, respectively, and conditioned further, among other things, for the carrying on of said farm in a husband-like manner, and the non-commission of waste ; that at the time said last-named mortgage was executed, it was agreed between said Eastman and said Gleason, that the latter should hold the notes secured by the other mortgages as collateral security for the notes secured by that mortgage, and that when all were paid, the two first mortgages should be discharged ; that there was a large amount due and unpaid on the last-made notes, by reason whereof and of said agreement the orator might collect all the notes secured by the first two mortgages; that one Amos Eastman had, as the orator was informed and believed, a subsequent mortgage on the same land; that one Hiram Page was living on said premises, claiming to have purchased the same of said Luke Eastman, and had given him a mortgage thereof to secure certain notes owned by one M. Freeman ; that one W. H. S. Whitcomb made some claim to the premises, as the orator believed, under some title from said Page, and assumed to control the same ; that the Colby Wringer Company also had some interest by way of purchase of the mortgage and notes given by Page to Eastman as aforesaid ; that one Levi Tillotson was apparently managing said premises, claiming under a lease from said Whitcomb, with whom and with said Page he appeared to be conspiring to strip said farm ; that the orator was informed that said Tillotson was committing waste upon said premises, by selling the produce thereof, &c ; that there

was due to the orator on said notes about $5,200, for which said farm was doubtful security; that there was nearly $2,000 due on other mortgages assumed by said Page and Whitcomb, and that the orator was informed, and believed, that the defendants did not intend to redeem. *Prayer*, for foreclosure, for an injunction against waste, and for further relief.

The defendant Luke Eastman did not answer. The answer of the defendants Whitcomb and Tillotson, admitted the execution of the two first-mentioned mortgages, but alleged that they were informed and believed that a part of the notes thereby secured was paid before February 1, 1872, and that there was then due less than $4,000, and about $3,800; that said Gleason was then the owner of said notes and pressing said Eastman for payment, which he was unable to make, but that on that day it was arranged between them that said Gleason should loan said Eastman $1000 and take his notes, secured by mortgage on said premises, for enough to cover that sum, the amount then due on the prior notes, and about $1260 for usurious interest, whereupon said third mortgage and the notes therein described were executed and the notes described in said first and second mortgages were thereby fully paid, but retained by said Gleason for the purpose of covering said usurious interest, and preventing said Eastman and all persons who might acquire an interest in said premises, from defending against the collection of said interest and the foreclosure of said mortgages; that they were informed and believed that when the orator became the owner of said mortgages and notes, he was informed of the consideration of the notes secured by the mortgage of February 1, 1872; that the trade between said Luke Eastman and said Gleason, the execution of said last-mentioned mortgage, and the taking by said Gleason of the assignment of the other mortgages, were in the interest, and intended for the benefit, of the orator, and that said execution and transfer were for the purpose of covering said usurious interest and preventing said Eastman and all persons from defending against the same and the foreclosure of said mortgage; that three of the notes secured by said mortgage of February 1, due in one, two, and three years respectively, had been fully paid by said Whitcomb, and that another of said notes for

$350 had been paid by said Eastman. The answer, after making further allegations relative to, and in denial of, the commission of waste, prayed that the notes secured by the first two mortgages should be decreed paid; that the sum included in the notes of February 1 should be deducted therefrom, and treated as payment thereon; and that the injunction might be dissolved.

The answer was traversed and testimony taken. It appeared by the deed from Page to Whitcomb, that the latter agreed to pay said mortgages and save Page harmless therefrom. And there was evidence tending to show, as the defendants claimed, that the orator did not purchase the notes in good faith, but had reason to suspect that there was a defence thereto. There was also testimony upon the question of whether the notes in fact included usurious interest. At the hearing, at the March Term, 1877, the orator asked for a decree only upon the mortgage to said Gleason, claiming to hold the other two as collateral security. The court, REDFIELD, Chancellor, entered a decree, *pro forma*, for foreclosure of that mortgage. Defendants appealed. The orator moved that the appeal be denied, unless under a rule that defendants pay some part of his claim. Motion overruled, and appeal allowed.

*L. F. Wilbur* and *L. L. Durant*, for the defendant Whitcomb.

The burden is on the orator to prove that he purchased the notes in good faith, and had no ground to suspect that there was any defence to them. *Estabrook* v. *Boyle*, 1 Allen, 412 ; *Powers* v. *Russell*, 13 Pick. 76 ; *Sandford* v. *Norton*, 14 Vt. 228 ; *Wiggin & Wiggin* v. *Bush*, 12 Johns. 306 ; *Wyatt* v. *Campbell*, 1 Moody & M. 80.

But he did not purchase them in good faith, and had ground to suspect that there was a defence to them. *Gould* v. *Stevens*, 43 Vt. 125 ; *Thompson* v. *Hale*, 6 Pick. 259 ; 12 Pick. 545 ; 1 Am. Lead Cas. 338 ; 4 Mass. 370 ; *Roth & Co.* v. *Colvin, Allen & Co.* 32 Vt. 125.

This is not a case where the purchaser of the premises has agreed to pay the face of the mortgage incumbrance, as a part consideration of the purchase. Whitcomb took the deed rather as an indemnity against loss in paying a part of the notes secured by

the mortgage, and stands as an endorser or surety ; and all equi-table defences are available to him.   The defence of usury is open to the surety, or to one standing in the situation of a surety, where the usurious interest is included in the contract sought to be en-forced.   11 Wend. 329 ;   39 Ind. 107 ; Blydenb. on Usury, 106. The purchaser of land, or of the equity of redemption of land, encumbered by a usurious mortgage, may set up the usury in de-fence to a bill of foreclosure.   *Gunnison* v. *Gregg*, 20 N. H. 100 ; 14 Johns. 435 ; *McAllister* v. *Jennan*, 32 Miss. 142 ; *Brooks* v. *Avery*, 4 N. Y. 225 ; *Cole* v. *Savage*, 10 Paige, 583 ; *Berdan* v. *Sedgwick*, 40 Barb, 359 ; *Green* v. *Tyler & Co.* 39 Pa. 361 ; 4 Pct. 205 ; 44 N. Y. 626 ; 1 Hilliard Mort. 599.

If the court find the orator a *bona fide* holder of the notes and mortgage, still the decree in his favor should be only for the amount he advanced for them, less the payments that have been made.   1 Hilliard Mort. 588 ; *Hubbard* v. *Chapin*, 2 Allen, 328 ; 14 Pick. 208 ; 12 Cush. 156 ; 2 Allen, 551.

The usury paid on the mortgage indebtedness and embraced in the notes should be treated as an equitable offset, or a payment on the mortgage indebtedness.   *Ward* v. *Sharp*, 15 Vt. 115 ; *Day* v. *Cummins*, 19 Vt. 496 ; *Nichols* v. *Bellows*, 22 Vt. 581 ; *Ward* v. *Whitney*, 32 Vt. 89 ; *Churchill* v. *Cole*, 32 Vt. 93 ; *Davis* v. *Converse*, 35 Vt. 503 ; *Ewing* v. *Griswold*, 43 Vt. 400 ; 1 Allen, 148 ; 1 Allen, 443.

The original notes and mortgages having been paid, the orator has no right to them, and no decree should be made to enforce them.

*Gleason & Field*, for the orator.

The petitioner should have a decree for the amount of his notes, and may have a decree upon the three mortgages.   *Drury* v. *Briscoe*, 42 Md.

The petitioner was a *bona fide* purchaser of the notes for value, and he is entitled to a decree for their full amount, even against the maker.   *Powers* v. *Bull*, 27 Vt. 662 ; *Griswold* v. *Davis*, 31 Vt. 390 ; *Brockway* v. *Mason*, 29 Vt. 519.

But the maker does not defend, nor claim that any usury was

included therein.   Whitcomb having accepted a deed conditioned that he is to assume said mortgages and notes, and save said Paige harmless from " all costs or trouble on account of the same," cannot make this defence.   He could not have made it even if the notes had remained in the hands of the original payee, and certainly not against the orator.   *Conover* v. *Hobart*, 24 N. J. Eq. 120 ; *De Wolf* v. *Johnson*, 10 Wheat. 367 ; *Dolman* v. *Cook*, 14 N. J. Eq. 56 ; *Vroom* v. *Ditmas*, 4 Paige, 527 ; *Green* v. *Kemp*, 13 Mass. 515 ; *Ward* v. *Whitney*, 32 Vt. 89 ; *Powell* v. *Hunt*, 11 Iowa, 430 ; *Loomis* v. *Eaton*, 32 Conn. 550 ; *Fielder* v. *Vamer*, 45 Ala. 429 ; *Cain* v. *Gilman*, 36 Ala. 168.

The plea of usury is a personal privilege, and if the debtor declines to avail himself of it, no stranger to the transaction can. *Pritchett* v. *Rollins*, 17 Kan., cited in Am. Law Mag., June, 1877, 383 ; *Cramer* v. *Lepper*, 26 Ohio, cited in Am. Law, Aug. 1876, 503 ; *Carmichael* v. *Bodfish*, 32 Iowa, 418 ; *Farmers & M. Bank* v. *Kimmel*, 1 Mich. 84.   Eastman paid Paige for paying the notes in full.   He had a right to provide for their payment as they were.   Paige also paid Whitcomb for paying them in full.

But it does not appear that any usury was included in the notes.

The opinion of the court was delivered by

ROYCE, J.   The petition in this case is brought by the orator as assignee, to foreclose a mortgage given by Luke Eastman to C. J. Gleason, to secure the payment of certain notes executed by said Eastman and made payable to said Gleason, and which were transferred to the orator and the mortgage assigned to him.   The defendant Whitcomb, after the execution of said mortgage, became the owner of Luke Eastman's equity of redemption in the premises described in said mortgage, and alleges in his answer that in the notes so given by the said Eastman to Gleason, and now held by the orator, there was included a large amount of usurious interest, and insists as a matter of legal right that he is entitled to have the same deducted in ascertaining the amount due to the orator.   In *Ward* v. *Whitney*, 32 Vt. 89, it is said by POLAND, J., that the claim of a party for usurious interest paid, is in the nature of a penalty as for a tort, and by the statute is given or left

to his personal choice or discretion whether he will enforce it or not, and if he do not elect to do so, *no other person,* not even a surety, can set it up for him. And in *Churchill and wife* v. *Cole & Underwood,* in the same volume, Wardwood, as subsequent mortgagee, endeavored to compel the application of money usuriously paid by the mortgagor on a prior mortgage in reduction of the debt secured by the mortgage, and the same judge says that the right to recover back money is personal to the party paying it ; that the statute intended that he only should enforce it, or those standing in the same legal right with him by his assent. So that if Eastman had made usurious payments to Gleason or the orator, the defendant Whitcomb, as the absolute owner of the equity of redemption, or subsequent mortgagee or surety for Eastman, could not avail himself of the benefit of such payments. Does the fact that the usury was not paid, but was included in the notes, exclude the case under consideration from the operation of the rule established in the cases above noticed. Whitcomb was not a party to the notes or mortgage executed by Eastman, and so could not defend upon the ground of privity to the contract. Neither did he acquire the right by virtue of the conveyance from Eastman to him. That conveyance vested in him all the right that Eastman had in the premises, subject, as between him and the orator, to the payment of what was apparently due upon the notes secured by the mortgage ; and the right to defend against those notes upon the ground that there was usury included in them, was so far personal in Eastman that the defendant Whitcomb is not entitled to make it. This view being decisive of the case, it is unnecessary to consider the other questions which have been presented.

Decree affirmed, and cause remanded.