Argued 15 December, 1902 ; decided 12 January, 1903.

## HUBERT v. WASHINGTON INVESTMENT ASSOCIATION.

[71 Pac. 64.]

BUILDING ASSOCIATIONS—ESTOPPEL ON STOCKHOLDER TO PLEAD USURY.

1. A stockholder in a building and loan association who has paid usurious interest, is not estopped to set up the defense of usury as against the association, in the absence of any showing that it has been induced by such payment to in any manner change or alter its position, so that the defense could operate to its prejudice.

RATE OF INTEREST ALLOWABLE ON USURIOUS CONTRACTS.

2. Where parties have entered into an usurious contract for the use of money, comprising interest, as such, and other charges that constitute the unlawful element, the lender should be allowed on the final application of payments only the rate of interest contracted for, and not the highest legal rate.

From Multnomah : ARTHUR L. FRAZER, Judge.

This is a suit by Flora Hubert and husband against the Washington National Building, Loan & Investment Association to cancel a mortgage. The facts, as disclosed by the pleadings, are that on June 28, 1895, the plaintiffs, having subscribed for twelve shares of the capital stock of the defendant, a corporation organized under the laws of the State of Washington, of the par value of $100 each, secured from said corporation a loan of $1,200, giving their note therefor, payable on or before seven years, to secure the payment of which they pledged said shares of stock, and also executed to the defendant a mortgage on lot 10 in block 2 in Atkinson's Addition to Portland, stipulating to pay monthly, on account of the loan, the sum of $19.80, as follows: Interest at 6 per cent per annum, premium at the same rate, and sixty-five cents per share on said stock. The plaintiffs, having paid $19 as membership and cancellation fees and seventy-two monthly installments, aggregating $1,444.60, allege in the complaint that they have paid the principal and more than 6 per cent interest per annum thereon, and are entitled to have all payments so made applied in satisfaction of the original debt, and pray that the loan may be decreed to be usurious, the mortgage satisfied of record, and the note surrendered. The answer, after denying the material allegations of the complaint, sets out as a further

defense and by way of cross-bill the scheme adopted by the defendant and the method pursued by it in conducting its business, and avers, in effect, that since its organization the understanding of its stockholders and officers has been that installments paid on account of stock, and dividends thereon, were not to be credited as payments, but were to be kept separate as investments, thereby fixing the value of the stock for the purpose of withdrawal or at maturity; that, in accordance with such custom; the sums so paid by plaintiffs and all other stockholders, and the dividends declared thereon, have, with their knowledge and consent, been invested, and dividends declared thereon, during the life of the stock; that there has been in existence a large amount of the stock, and specified dividends have been made in pursuance of such contracts as interpreted by the stockholders; that a large amount of said stock is outstanding, the holders of which are entitled to have its value and the maturity thereof fixed upon the basis so adopted; that to apply the payments made by plaintiffs otherwise than has been their custom and understanding and that of all other stockholders, would result in advantage to the stock of the former and a detriment to that of the latter; that frequent accountings have been made between plaintiffs and defendant upon such basis, and a memorandum thereof has been noted in their pass book, in the entry of which they have universally acquiesced, and upon which the defendant has relied. The answer then adds the following allegation: "And the plaintiffs are therefore estopped to claim an application of payments made and of dividends declared in any other manner than that herein above agreed upon, assented to, and followed by the practice of the company and of the plaintiffs." No demurrer having been interposed, or reply filed, plaintiffs moved for a decree upon the pleadings, which having been allowed, and the relief prayed for in the complaint granted, the defendant appeals.                                    Affirmed.

For appellant there was an oral argument by *Mr. W. A. Peters,* with a brief over the names of *Guy G. Willis* and *Peters & Powell,* to this effect:

*First.* Under the facts of the present case the respondents are estopped by their conduct, extending through a period of six years and over, to claim usury.

*Second.* Even if the rule that all payments made by respondents were to be credited as partial payments upon the loan is applied here, yet the rate of interest allowed appellant should be 10 per cent and not 6 per cent per annum, as fixed by the trial court: *Cairncross* v. *Lorimer,* 7 Jur. N. S. 149; *Tuesdale* v. *Ward,* 24 Mich. 117; *Lewis* v. *City of Utica,* 67 Barb. 456; *Ruehlmann* v. *Atlantic Bld. Assoc.* 6 Ohio Cir. Ct. 285; *Goggin* v. *Kelly* (Tex. Civ. App.), 25 S. W. 1133; *American Manganese Co.* v. *Virginia Manganese Co.* 91 Va. 272 (21 S. E. 466).

For respondent there was a brief over the name of *William Reid,* to this effect:

*First.* Public policy will not permit the doctrine of estoppel to aid in validating a void contract: *Robinson* v. *Patterson,* 71 Mich 141 (39 N. W. 29); *Solomon* v. *Chesley,* 58 N. H. 238; *Osborn* v. *Elder,* 65 Ga. 360; *Tribble* v. *Anderson,* 63 Ga. 31; *Lynch* v. *Rosenthal,* 144 Ind. 86 (42 N. E. 1103); *Calfee* v. *Burgess,* 3 W. Va. 247; *Norris* v. *Norris,* 9 Dana, 318; *Brown* v. *Wylie,* 2 W. Va. 502 (98 Am. Dec. 781); *Harkness* v. *Underhill,* 66 U. S. (1 Black) 316; *Holmes* v. *Johns,* 56 Tex. 41; *Powell* v. *Patison,* 100 Cal. 236 (34 Pac. 677).

*Second.* A party cannot by contract or by his conduct debar himself from setting up usury: 27 Am. & Eng. Enc. Law (1 ed.), 957; *Miles* v. *Kelly* (Tex. Civ. App.), 25 S. W. 724; *Lewis* v. *Barton,* 106 N. Y. 70 (12 N. E. 437); *Cade* v. *Larned,* 109 Ga. 292 (34 S. E. 566); *Exeter Nat. Bank* v. *Orchard,* 39 Neb. 485 (58 N. W. 144).

MR. CHIEF JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1. It is contended by defendant's counsel that, though it has been held by this court that a loan of money by a building association upon a contract stipulating for the payment of interest and premiums exceeding the maximum rate of legal interest is usurious (*Washington Invest. Assoc.* v. *Stanley,* 38

Or. 319, 63 Pac. 489, 84 Am. St. Rep. 793*; *Western Sav. Co.*
v. *Houston,* 38 Or. 377, 65 Pac. 611; *Pacific Build. Co.* v. *Hill,*
40 Or. 280, 67 Pac. 103, 56 L. R. A. 163), yet the contract
entered into between plaintiffs and defendant was not illegal,
but voidable, and that plaintiffs, by making monthly payments
thereon, with knowledge of its by-laws and method of applying
the money so received upon each share of stock, thereby rati-
fied the agreement, and are estopped from pleading usury, and
hence the court erred in decreeing a cancellation of the mort-
gage.  It is argued in support of the alleged estoppel that,
though the defendant is, as to third persons, a legal entity, in
which the duties and obligations of its stockholders are merged,
yet in controversies between one stockholder and another it
stands as a trustee to carry into execution their agreements for
their mutual advantage, in the enforcement of which its rela-
tion is that of a stakeholder.  A contract for the payment of a
rate of interest in excess of that prescribed by law involves no
moral turpitude, is *malum prohibitum* only, and voidable by
the borrower and those in privity with him, who may either
repudiate the agreement or waive the personal privilege:
Webb, Usury, §§ 35, 363; Tyler, Usury, p. 403.  The agree-
ment to pay the sums specified in the note and mortgage, not
being void *ab initio,* was susceptible of ratification (*Bradtfeldt*
v. *Cooke,* 27 Or. 194, 40 Pac. 1, 50 Am. St. Rep. 701), and this
presents the question whether plaintiffs' monthly payments
constitute such a confirmation as to estop them from invoking
the plea of usury.  The impediment relied upon by defendant
to defeat the relief sought should have no greater efficacy
than a stipulation to renounce the special immunity conferred
by law; and it has been held, in an action on a promissory note
given to a building association, providing for the payment of
illegal interest, that a defendant cannot debar himself from
setting up usury: *Miles* v. *Kelly* (Tex. Civ. App.), 25 S. W.
724.  The legal principle thus announced was reiterated in
*Sturgis Nat. Bank* v. *Smyth,* 9 Tex. Civ. App. 940 (30 S. W.
678), in which Mr. Justice FINLEY, speaking for the court, in

---

*Reported also in 58 L. R. A. 816.

deciding the case, says: ''Had the makers of the usurious obligation, at the time of its execution or afterwards, executed a separate obligation not to plead usury, we do not think it could be successfully urged as an estoppel.'' In *Hutchinson* v. *Abbott,* 33 N. J. Eq. 379, it was held that a promise by one of the mortgagors to an assignee to pay the interest on the mortgage promptly did not estop him from setting up usury in the interest previously paid. The superstructure sought to be erected upon the basic principle of an estoppel of this character, the proof of the existence of which would render it available as a matter of defense, must be a change in the position of a party, induced thereto by the act, omission, or conduct, in accordance with the real or apparent intention of the party against whom the estoppel is alleged. The answer avers that the payments of the several installments entered in plaintiffs' pass book and acquiesced in by them were relied upon by defendant, but no allegation is found therein to the effect that it was induced thereby to change, or that it ever altered, its position in consequence thereof. In the absence of this element, we do not think the plaintiffs are, or upon principle ought to be, estopped from interposing the plea of usury, for to reach a different conclusion would be to hold that a needy borrower, who, not understanding the conditions imposed, should give to a building association a note and mortgage, stipulating to pay, in addition to interest, a pretended premium or other compensation, aggregating a most extravagant rate, could not, by returning the principal and paying the specified interest, escape the consequences of his ignorance, after voluntarily paying one or more of the installments, would be tantamount to a denial of the application of the maxim that equity will not suffer a wrong without a remedy.

2. It is contended that, inasmuch as the statute provides that on contracts interest at the rate of 10 per cent per annum may be charged by express agreement of the parties (B. & C. Comp. § 4595), the court erred in not allowing defendant more than 6 per cent interest per annum on its loan. It is argued that, as in the case of *Washington Invest. Assoc.* v. *Stanley,* 38 Or. 319

(84 Am. St. Rep. 793, 63 Pac. 489*), the premium added to the interest rendered the rate agreed to be paid usurious, the premium is necessarily regarded as an item of interest, and, this being so, the defendant is entitled to receive 10 per cent We think the point insisted upon is without merit, for, the parties having, by express agreement, stipulated to pay interest, as such, at the rate of 6 per cent per annum, the obligation to give a premium of 6 per cent per annum and also sixty-five cents upon each share of stock pledged was a subterfuge, evidently adopted by the defendant to circumvent the statute, and it is not legally entitled to any greater compensation for the use of its money than the rate specified as interest in the contract. It follows from these considerations that the decree is affirmed.                                        AFFIRMED.

---

*Reported also in 58 L. R. A. 816, with note.